FILED
IN OPEN COURT

APR 4 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 2:12cr196 |
| | ) | |
| BRETT C. WALSH, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in Count Two of the Criminal Indictment and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. Since October 2012, agents from the Hampton Roads Border Enforcement Security Taskforce (HR-BEST), a division of the Department of Homeland Security, have been investigating the suspected importation of 3,4- Methylenedioxy-N-methcathinone (Methylone), a Schedule I controlled substance, into the United States from China by Timothy Sean MOORE JR, Caroline Elizabeth TAYLOR, and Angelia WALKE hereinafter respectively referred to as MOORE, TAYLOR, and WALKE.

2. In early October, 2012, Defendant Brett WALSH and another man were stopped in North Carolina with approximately four ounces of Methylone, a Schedule I controlled substance, and a firearm. At that time, WALSH was not charged. However, when Portsmouth officers received information from the man with whom WALSH was travelling that there were additional

1



quantities of drugs and guns at a residence in Portsmouth, Virginia, shared by the two men[1], a search warrant was obtained and executed on the residence on October 7, 2012. At the Thomas Street residence, which WALSH and the man shared, law enforcement officers recovered 96.8 grams of Methylone, several firearms, ammunition, approximately 1.8 grams of marijuana, a metal grinder, a digital scale with suspected narcotics residue, packaging materials, and $14,972.00 United States currency.[2]

3. Upon returning to Virginia, WALSH voluntarily met with law enforcement officers and told them about the incident. During that meeting, WALSH admitted that his source of supply for the Methylone were Defendants TAYLOR and MOORE. WALSH further stated that MOORE began buying Methylone from a laboratory in China approximately in the fall of 2012. MOORE told WALSH that he acquired an email address for a laboratory in China which sold Methylone, and that he would wire money to China to facilitate the purchases. Caroline TAYLOR (MOORE's girlfriend) talked MOORE into beginning Methylone importation and distribution. Both MOORE and TAYLOR would distribute Methylone upon its arrival from China. According to WALSH, MOORE rarely drove so TAYLOR would drive when deliveries of Methylone were made.

3. On one prior occasion, WALSH saw an international parcel at MOORE's residence that MOORE identified as the packaging in which Methylone arrived from China. MOORE told WALSH that he "got it off the internet." WALSH stated that MOORE had received two shipments of Methylone from China. The first shipment was for between two and four

---

[1] According the WALSH, he had only been residing there for approximately three days at the time.

[2] Only $1,605 of the U.S. Currency was located in the Defendant's bedroom. The rest of the currency was in the other man's bedroom, either on his dresser or in a safe. The firearms recovered from the house were mainly in the other man's bedroom, but ammunition and magazines for the weapons were located throughout the residence.

2

kilograms, and the second was for between five and six kilograms. MOORE sold each kilogram of Methylone for $10,000 to $12,000. WALSH stated that he purchased four ounces of Methylone from MOORE on MOORE's first shipment, and that on a date near October 3, 2012, he purchased one kilogram of Methylone from MOORE for $11,200. WALSH paid MOORE $5,600 upfront with the agreement that he would return the remaining $5,600 upon selling the Methylone. According to WALSH, the four ounces of Methylone which were found in the vehicle in North Carolina on October 4, 2012, were from that kilogram purchase.

4. On October 9, 2012, while monitored by law enforcement, WALSH sent MOORE a text message asking when he could come to MOORE's residence to conduct a Methylone transaction. MOORE responded that WALSH could come at that time. A surveillance team was stationed within viewing-distance of MOORE's residence. Prior to his departure, WALSH's vehicle and his person were consensually searched for the presence of contraband with negative results. After arriving at MOORE's residence, WALSH stayed inside for approximately twenty minutes. After departing MOORE's residence, WALSH met with law enforcement officers in a nearby parking lot. WALSH stated that MOORE gave WALSH four ounces of Methylone and said "I'm all out, but I'll be good by this weekend." The four ounces of Methylone was seized by members of the investigative team.

5. The acts of the defendant in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities. The defendant further

3



acknowledges that he is obligated under his plea agreement to provide additional information about this case beyond that which is described in this statement of facts.

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: *(signature)*
Amy E. Cross
Special Assistant United States Attorney

<u>Defendant's Signature</u>:   After consulting with my attorney and pursuant to the plea agreement entered into this day between myself, the United States and my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Brett C. Walsh
Defendant

<u>Defense Counsel's Signature:</u>   I am Brett C. Walsh's attorney. I have carefully reviewed the above Statement of Facts with him. To the best of my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Lawrence H. Woodward
Counsel for the Defendant