IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **Criminal No. 2:12cr196-004** |
| v. ) | |
| ) | **Sentencing Date: October 15, 2013** |
| **BRETT C. WALSH,** ) | |
| ) | |
| **Defendant.** ) | |

POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING AND
MOTION TO GRANT DEFENDANT ADDITIONAL ONE-LEVEL DECREASE FOR
ACCEPTANCE OF RESPONSIBILITY

The United States of America, through its attorneys, Dana J. Boente, Acting United States Attorney, and Amy E. Cross, Special Assistant United States Attorney, hereby submits its position with respect to Defendant Brett C. Walsh's (hereinafter "Defendant" or "Walsh") sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable Guidelines Range to be a guideline range of 70 to 87 months imprisonment, based upon an Offense Level Total of 27 and a Criminal History Category of I. In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and, except as stated below, has no objections.

There is one outstanding defense objection to the PSR to the application of the Weapons Enhancement under 2D1.1(b)(1). In addition, while not specifically objected to by the Defendant, the Defendant's guidelines should reflect a lower conversion rate of Methylone to Marijuana so all co-defendants in this case are treated consistently. The government discusses both of these issues at length herein.

For the reasons outlined below, the United States respectfully submits that a sentence at the low-end of the guideline range would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

**I.     Motion**

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b), to grant an additional one-level reduction in the offense level for acceptance of responsibility. The defendant assisted authorities in the investigation and prosecution of her own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

**II.    Outstanding Objections**

    **A.     *Enhancement for Dangerous Weapon under U.S.S.G. §2D1.1(b)(1)***

U.S.S.G. §2D1.1 establishes the base level for sentencing a defendant for narcotics offenses, including violation of 18 U.S.C. §§ 841 and 846, of which the Defendant has been found guilty. After a finding of the base level, certain specific offense characteristics are considered in enhancement or mitigation. One such consideration, the "weapon enhancement" under U.S.S.G.§ 2D1.1(b)(1), increases the base offense level by two levels if a "dangerous weapon (including a firearm) was possessed, unless it is clearly improbable that the weapon was connected with the offense." *Commentary to U.S.S.G. §2D1.1, Application Note 11.* In determining whether this enhancement applies, the District Court must determine by a

preponderance of the evidence that the weapon was connected with drug activity or in the same course of conduct[1]. *United States v. Manigan*, 592 F.3d 621, 628-629 (4th Cir. 2010).

It is well decided that a handgun, as opposed to a rifle or other long gun, is a drug dealer's weapon of choice, due to its ability to be concealed and its deadly force if needed. *Manigan, supra* at 629. The purpose for a firearm in close proximity to where narcotics are prepared for distribution is for protection of the product or the dealer. This is not a new concept. As the Fourth Circuit adopted in *United States v. Manigan,* "'so long as a firearm's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapon to the offense conduct.'" 529 F.3d at 629, *citing United States v. Corcimiglia*, 967 F.2d 724, 727 (1st Cir. 1992). In addition, the Fourth Circuit has held that when making a factual determination as to whether a firearm is connected to drug activities, "the fact finder is free to consider the numerous ways in which a firearm might further or advance drug trafficking. For example, a gun could provide a defense against someone trying to steal drugs or drug profits, or it might lessen the chance that a robbery would even be attempted. ... Furthermore, a firearm could help a drug trafficker defend his turf by deterring others from operating in the same area." *United States v. Lomax,* 293 F.3d 701, 706 (4th Cir. 2002).

Further, while the Government bears the burden of showing that the firearm is connected to the drug trafficking offense, it does not have to show that the weapon was present during a specific drug trafficking incident. *United States v. Adams*, 125 F.3d 586, 596 (7th Cir. 1997). "The requirement is only that the weapon was possessed during any relevant conduct." 125 F.3d at 596-597. As the Fourth Circuit Court of Appeals has upheld, "guns found in close proximity

---

[1] To find a preponderance of the evidence, the District Court must only find "that the fact is more probable than its non-existence." *United States v. Manigan*, 592 F.3d 621, 631 (4th Cir. 2010)(internal citations and punctuation omitted).

to drug activity are presumptively connected to that activity." *Manigan*, 592 F.3d at 632. Additionally, a firearms enhancement "is permissible if possession of a firearm by a co-conspirator was reasonably foreseeable to the defendant." *United States v. Hanberry*, 1997 U.S. App. LEXIS 32326, 4(4th Cir. 1997), *citing United States v. Kimberlin,* 18 F.3d 1156, 1160 (4th Cir. 1994).

In early October, 2012, Defendant Brett Walsh and his Portsmouth, Virginia roommate were stopped in North Carolina with approximately four ounces of Methylone and two firearms – a Ruger .357 Magnum and a TT33 Tokarev handgun. Both guns were loaded. At that time, the Defendant's roommate told law enforcement officers that the Defendant did not have anything to do with the drugs or the firearm. The Defendant was released.

Based on information received from the Defendant's roommate, a search warrant was executed on their Thomas Circle residence. Inside officers recovered 96.8 grams of Methylone in a common area of the home, several firearms, ammunition, 1.8 grams of marijuana, a metal grinder, a digital scale with suspected narcotics residue, packaging materials, and $14,972.00 U.S. Currency. While most of the firearms were recovered in the roommate's bedroom, ammunition and magazines for the weapons were located throughout the residence.

When the Defendant returned to the Eastern District of Virginia, he voluntarily met with the Portsmouth Police. During that meeting, the Defendant admitted that he was, in fact, involved in the delivery of Methylone to persons in North Carolina with his roommate. It was his deal and his roommate had taken the blame for it. Further, the Defendant told a federal agent that one of the firearms recovered from the Thomas Circle house during the search warrant belonged to him.

During the Defendant's short term dealing in Methylone, he was surrounded by firearms. While he only resided in the Thomas Circle house for a short period of time, the house was a riddled with drug paraphernalia, scales, Methylone, packaging materials, firearms, ammunition, magazines and cash. The large stock pile of firearms in the Thomas Circle house was located primarily in his roommate's bedroom. However, the fact that the firearms were located in a particular room, belonging to another individual, falls short of protecting the Defendant from the weapon enhancement under the guidelines, especially when ammunition and magazines for the weapons littered the common areas of the home. Further, the Defendant and his roommate travelled together to North Carolina to deliver Methylone. During the trip they were armed – two loaded firearms were hidden in the center console between them as they drove the four ounces of Methylone, which Walsh had received from co-defendant Timothy Moore, to a drug customer. While the firearm in the vehicle could not be charged as a substantive 18 U.S.C. 924(c) offense within the Eastern District of Virginia because of jurisdictional issues, the fact that the Defendant possessed a firearm during relevant drug trafficking conduct is sufficient to find nexus between the firearm and the criminal behavior to warrant the application of the Dangerous Weapons enhancement under U.S.S.G. § 2D1.1(B)(1). The government requests that the defense objection to the enhancement be denied.

  **B.**   *Conversion of Drug Weight Using MDMA and 1:500 Gram Ratio*

The parties agree that the Probation office correctly determined, using the above guidelines, that MDMA, commonly known as Ecstasy, is the most closely related drug to Methylone in the guideline. The guideline ratio is 1 gram of MDMA is equivalent to 500 grams of marijuana. The sentencing guidelines for the Defendant have been determined using this calculation, resulting in 556.7018 kilograms of marijuana being attributed to the Defendant for

the Methylone he received from Timothy Moore, Jr. and distributed in the Eastern District of Virginia and surrounding areas.

The Defendant has not specifically objected to the 1:500 ratio of Methylone to marijuana nor has he asked that the Court adopt a lesser ratio of 1:250 based on the potency of Methylone being approximately half of MDMA. The Government has provided evidence that the DEA has made a determination that Methylone is half the potency of true MDMA, but that determination has not been adopted by the U.S. Sentencing Guidelines Commission. It is the government's position that the Commentary and Application Notes under U.S.S.G.§2D1.1 give guidance on *how* to select the most analogous (or closely-related) drug listed in the guideline but does not instruct the Court to then vary from the drug conversion equivalency if there is a lesser potency of the drug involved, in this case, Methylone. Clearly, had that result been intended, the Application Note could have directed the District Court to make a finding for itself as to the actual potency of the drug involved and then a reduction or increase based thereon.

However, in the cases of Caroline Taylor and Angelia Walke, codefendants of Walsh, the Court has held that the correct conversion ratio for Methylone to marijuana is 1 gram of Methylone to 500 grams of marijuana. In each instance, the Court granted a two-point downward departure on the base offense level, based on the DEA findings that Methylone is about half as potent as MDMA, its most analogous drug listed in the sentencing guidelines. While the United States maintains that an offense level of 28 is appropriate and supported by the evidence in this case, in light of the guidelines departure/variances allowed co-defendants Taylor and Walke, due to the potency argument, the United States submits that the base level of the guidelines should be reduced by two-points in the same manner as co-defendants Caroline

Taylor and Angelia Walke, leaving the Defendant with a base level of 26 for the drug weights in this case.[2]

### III. Background

On April 4, 2013, the Defendant entered a guilty plea pursuant to a written plea agreement to Conspiracy to Import Methylone, in violation of 21 U.S.C. §§ 952, 963, and 960 (a)(1) and (b)(3), one of three counts returned by a federal grand jury indictment. The indictment also contained a forfeiture count. The matter was set for sentencing after preparation of a presentence investigation report.

### IV. Position on Sentencing and Argument

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

---

[2] If there are no other modifications to the sentencing guidelines, the Defendant would have an adjusted offense level of 28. He would be given a three level reduction for timely acceptance of responsibility. His total offense level would be a 25. At a criminal history category of I, the Defendant's advisory guidelines would range from 57 to 71 months.

The government respectfully submits that a sentence at the low-end of the advisory guideline range is appropriate and reasonable in light of the Section 3553(a) factors.

### A.     *Nature and Circumstances of the Offense*

Brett Walsh, 23, made poor choices to entangle himself with his co-defendants Caroline Taylor and Timothy Moore, Sr. Walsh, a high school graduate with some college credits, began selling Methylone, a Schedule I controlled substance for the pair in the fall of 2012. Soon, the Defendant moved into a drug-filled house with another co-conspirator and was stopped in North Carolina with four ounces of Methylone and two loaded firearms. The drug trafficking itself appears common – an action the Court sees often. However, the man behind the actions and his choices after engaging in the criminal activity do, the government concedes, set him apart.

In October, 2012, agents within the Department of Homeland Security Investigations, specifically member of the Hampton Roads Border Enforcement Security Taskforce (HR-BEST) had been investigating the importation of Methylone into the United States from China. PSR ¶ 8-1. In early October, the Defendant and a co-conspirator were stopped in North Carolina with four ounces of Methylone and two firearms. Walsh was not charged at that time because his co-conspirator told law enforcement officers that he was not involved in the drug trafficking. PSR ¶¶ 8-2, 10. However, a search warrant was executed on the home shared by the Defendant and his co-conspirator in Portsmouth, Virginia. Numerous weapons, 96.8 grams of Methylone, ammunition, 1.8 grams of marijuana, a metal grinder, a digital scale, packaging materials and $14,972.00 were recovered from the home. PSR ¶ 8-2.

The Defendant returned to Virginia, uncharged, and met voluntarily with law enforcement officers. It is in this that the Defendant differs from most, if not all, of those who have proceeded before him in this Court. Despite his co-conspirator completely covering his

wrong-doings and maintaining to law enforcement that Walsh was blameless regarding the guns and drugs, the Defendant admitted to dealing Methylone, to receiving it from Timothy Moore and Caroline Taylor and for setting up the drug transaction in North Carolina for which his co-conspirator had been charged. The Defendant provided information about his source of supply and even made a controlled purchase for law enforcement officers. At no time did the Defendant ask for a lawyer, nor did he attempt to conceal his responsibility regarding his drug distribution. The investigation into the Defendant's drug distribution for a one month period attributed him with just over one kilogram of Methylone and a small amount of marijuana.

The Government concedes the Defendant's own admissions and cooperation with law enforcement brought him into the charged federal drug conspiracy with his co-defendants Timothy Moore, Sr., Caroline Taylor and Angelia Walke. In light of his cooperation and minimal criminal history, the United States is asking that the Defendant be sentenced at the low-end of the advisory sentencing guidelines.

### B. *History and Characteristics of the Defendant*

This 23-year old defendant's history and characteristics are atypical of someone charged with drug trafficking before the federal court. The Defendant is one of two children born to parents, John and Teri Walsh. The Defendant grew up in Chesapeake, Virginia, in a dual-income household, free from abuse and neglect. The Defendant reported that all his basic needs were met. The Defendant was an average student, involved in athletics and sports, and having a short period of rebellion around age 17 or 18. PSR ¶¶ 25, 26.

The Defendant has never been married and has no children. PSR ¶ 27.

The Defendant graduated from Western Branch High School in 2008 and enrolled in college classes at Tidewater Community College in the fall of 2008. The Defendant completed

seven semesters of course work by the spring of 2012. PSR ¶¶ 38, 39. During high school and college, the Defendant maintained employment. In 2009, the Defendant was awarded an apprenticeship to the Norfolk Naval Shipyard as a boilermaker. However, after a year in the program, the Defendant decided he did not like what he was doing and left voluntarily. PSR ¶ 44. Since 2007, the Defendant has maintained a variety of jobs, including a salesperson at a surf shop, a laborer, and a waiter at a local restaurant. PSR ¶¶ 42, 43, 45-47. Presently, the Defendant is employed at R&L Machine Shop, Inc, in Chesapeake as a machinist apprentice. He is reported to be "doing very well." PSR ¶ 41.

  The Defendant reported good overall physical and mental health. Physically, the Defendant suffers from back pain due to scoliosis and residual side effects from a car accident when he was 19. Since his arrest for the underlying charges, the Defendant has been diagnosed with hypertension. PSR ¶¶ 28-29. With regard to mental health, the Defendant was diagnosed as a teenager with ADHD and prescribed medication. In addition, the Defendant has reported anxiety and depression at various times in the last several years. The Defendant has sought medical care and has been prescribed medication to assist in managing these issues. ¶¶ 31-33.

  Apart from any mental or physical health issues, the Defendant does admit to using marijuana and alcohol since his teenage years. At age 14 or 15, the Defendant began drinking alcohol. He gradually drank more until he drank "a lot" between the ages of 20 and 22. When he was charged with this offense, he limited his alcohol consumption to "every now and then." PSR ¶ 35. Shortly after beginning to drink alcohol, the Defendant, 16, began to use marijuana regularly, from one time per week to multiple times a day until November 2012. The Defendant has experimented with powder cocaine, mushrooms, and ecstasy, but did not consistently use any of the substances. PSR ¶ 34. During the pendency of this case, the Defendant completed a ten-

week out-patient substance abuse treatment program. Further, he has had nine negative urine screens while on pre-trial release. PSR ¶¶ 36-37.

The Defendant has had very little prior contact with the legal justice system. He has no juvenile criminal history. His adult criminal history consists of one count of Possession of Marijuana, which was dismissed in January 2012 after the Defendant complied with the terms of the First Offender program. PSR ¶ 20. The Defendant has no other criminal matters pending, based on a check by probation. PSR ¶ 21.

This Defendant is not the type of drug dealer that the judicial system typically sees. He is educated and has little criminal history. His family is supportive. He disclaims any use of illegal narcotics since 2012. He has minimal mental health issues and has consistently maintained employment over the last six years. Unlike many defendants that flow through the court system, the Defendant confessed his role in a Methylone distribution conspiracy without being charged, without an attorney and without any true benefit to himself. He has entered a guilty plea and did not require that the United States to try the case against him.

Despite all that, the Defendant is before the Court for his brief criminal conduct in the fall of 2012 when he conspired with Timothy Moore and Caroline Taylor to sell Methylone imported from China for them. He is attributed with pushing just over one kilogram of Methylone out into the Eastern District of Virginia and surrounding areas. Law enforcement intervention and the Defendant's own integrity, taking responsibility for his criminal behavior, ended a short, but productive, drug trafficking career.

    C.    *Other Factors to be Considered Under 18 U.S.C. § 3553(a)*

Among the other factors a sentencing court is to consider under Section 3553(a), the United States would highlight the need for the sentence imposed in this case to reflect the

seriousness of the defendant's offense and afford adequate deterrence to future criminal conduct. Reflecting additionally on the amount of drugs in the conspiracy and the Defendant's actions balanced with the measures he took to rectify his mistakes, the United States submits that these factors would be best addressed by a sentence at the low-end of the advisory guidelines.

The government respectfully submits that a sentence at the low-end of the advisory guidelines is sufficient, but not greater than necessary, to fulfill the purposes of Section 3553(a), and asks the court to impose the same.

                              Respectfully submitted,

                              Dana J. Boente
                              United States Attorney

By:    ___/s/_____
          Amy E. Cross
          Special Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of October, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to the following:

>Lawrence H. Woodward, Jr., Esquire
>4525 South Boulevard, Suite 300
>Virginia Beach, Virginia 23452

I HEREBY CERTIFY that on this 8th day of October, 2013, I emailed a true and correct copy of the foregoing to the following:

>Tara Gill, Probation Officer
>United States Probation
>600 Granby Street, Suite 200
>Norfolk, Virginia 23510

>_____/s/_____
>Amy E. Cross
>Special Assistant United States Attorney
>Virginia State Bar No. 45289
>Attorney for the United States
>United States Attorney's Office
>101 West Main Street, Suite 8000
>Norfolk, VA 23510
>Office Number: 757-441-6331
>Facsimile Number: 757-441-6689
>Email: amy.cross@usdoj.gov